# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

JEREMIAH CRAYCRAFT,

        Petitioner,   :  Case No. 1:13-cv-089

- vs -     District Judge William O. Bertelsman
    Magistrate Judge Michael R. Merz

WARDEN, Hocking Correctional Facility,

        :

        Respondent.

## REPORT AND RECOMMENDATIONS

With the assistance of counsel, Petitioner Jeremiah Craycraft brought this habeas corpus action under 28 U.S.C. § 2254 to obtain relief from his conviction and sentence in the Clermont County Common Pleas Court for child endangering, felonious assault, and domestic violence (Petition, Doc. No. 2, ¶¶ 1, 5). On Magistrate Judge Litkovitz's Order (Doc. No. 3), the Warden has filed a Return of Writ (Doc. Nos. 9, 10). Craycraft filed a Traverse (Doc. No. 15) and, with Court permission, the Warden has filed a Reply to the Traverse (Doc. No. 18). The case is thus ripe for decision.

Craycraft pleads the following ground for relief:[1]

> **Ground One:** Petitioner's right to due process of law, as guaranteed by the Fourteenth Amendment to the United States Constitution was violated when the Petitioner was resentenced to a harsher sentence after a remand following the Ohio Supreme Court's decision in *State v. Johnson,* 128 OhioSt.3d 153, 2010-Ohio-6314.

---

[1] Although three Grounds for Relief are pled in the Petition, Petitioner "does not proceed on claims two and three." (Traverse, Doc. No. 15, PageID 1712, n. 1.) The Court treats that as a withdrawal of those claims with prejudice.

1

**Supporting Facts:** Petitioner, Jeremiah Craycraft was convicted of two counts of felonious assault, two counts of child endangering, and two counts of domestic violence. The trial court sentenced Mr. Craycraft to six years in prison on both felonious assault counts, five years on two child endangering counts, and four years on the domestic violence counts. The court ran Counts 1, 2, 5 and 6 consecutive to one another and ran Counts 7 and 8 concurrent for a total aggregate sentence of 22 years in prison.

After the Twelfth District Court of Appeals affirmed Mr. Craycraft's conviction the Ohio Supreme Court reversed the Twelfth District's decision and remanded the matter to the Twelfth District for application of its decision in *State v. Johnson*, 128 O.St.3d 153, 2010-0hio-6314.

The Twelfth District held the State relied upon the same conduct to support Mr. Craycraft's convictions for felonious assault, child endangering and domestic violence. Consequently, the offenses were allied offenses of similar import. The Court, therefore, ordered the trial court to merge the allied offenses after the State elected which offense to pursue on remand.

Upon remand, the State elected to pursue the Felonious Assault counts, for each child, for sentencing purposes. The trial court then sentenced Appellant to serve eight years (verses [sic] six) on each of the felonious assault counts, consecutive, for a total aggregate sentence of sixteen years in prison with credit for time served. In support of its sentence, the trial court stated that at the time of the initial sentence, it could have imposed fifty-two years in prison, but chose only to impose twenty-two years. The trial court stated it considered all the charges as a whole and determined individually what the court believed was an appropriate sentence.

Mr. Craycraft was resentenced by the same judge after a successful appeal to Ohio Supreme Court. As a result, the presumption of vindictiveness applies. However, the Twelfth District determined that the presumption of vindictiveness does not apply when a defendant is resentenced following a remand for the application of this Court's decision in *Johnson*.

The presumption of vindictiveness was not overcome because the trial court relied only upon the information it had before it during the initial sentencing hearing. There was no objective information regarding Mr. Craycraft's conduct or other events that were presented to justify an increase in the sentence. As a result, Mr.

> Craycraft's right to due process of law was violated when the trial court increased his sentence after the case was remanded.

(Petition, Doc. No. 2, PageID 17-19.)

**Procedural History**

Craycraft was indicted for felonious assault on his two-month-old twin children, along with counts for endangering those children and domestic violence toward them. He was convicted at trial on two counts of felonious assault, on each of which he was sentenced to six years imprisonment, to be served consecutively. Counts 3 and 4 for child endangering were merged with Counts 5 and 6 and Craycraft was sentenced to five years each on the merged charges, to be served consecutively to each other and consecutively to the felonious assault charges, for a total incarceration of twenty-two years. Craycraft was also sentenced to concurrent time for the domestic violence counts.

On direct appeal Craycraft raised six assignments of error, including a claim that all of the charges of conviction were allied offenses of similar import. The Twelfth District Court of Appeals overruled all six assignments of error. Craycraft appealed to the Ohio Supreme Court on March 24, 2010. The Ohio Supreme Court accepted the appeal on a proposition of law involving the allied offenses claim and held this case for decision pending its decision in *State v. Johnson*, 128 Ohio St. 3d 153 (2010), which was handed down on December 29, 2010. On the same day, the Ohio Supreme Court reversed the court of appeals in this case and remanded for application of the *Johnson* decision. *State v. Craycraft,* 128 Ohio St. 3d 337 (2010).

3

On remand, the Twelfth District reconsidered its decision on the sixth assignment of error in light of *Johnson* and wrote:

> **[\*\*P11]** The Ohio Supreme Court established a new two-part test for determining whether offenses are allied offenses of similar import under R.C. 2941.25 in *State v. Johnson*, 128 Ohio St.3d 153, 2010 Ohio 6314, 942 N.E.2d 1061 (overruling *State v. Rance*, 85 Ohio St.3d 632, 1999 Ohio 291, 710 N.E.2d 699). The first inquiry focuses on whether it is possible to commit both offenses with the same conduct. Id. at P 48. It is not necessary that the commission of one offense will *always* result in the commission of the other. Id. Rather, the question is whether it is *possible* for both offenses to be committed by the same conduct. Id., quoting *State v. Blankenship* (1988), 38 Ohio St.3d 116, 119, 526 N.E.2d 816. Conversely, if the commission of one offense will *never* result in the commission of the other, the offenses will not merge. *Johnson* at P 51.
>
> **[\*\*P12]** If it is possible to commit both offenses with the same conduct, the court must next determine whether the offenses were in fact committed by a single act, performed with a single state of mind. Id. at P49, quoting *State v. Brown*, 119 Ohio St. 3d 447, 2008 Ohio 4569, P 50, 895 N.E.2d 149 (Lanzinger, J., concurring in judgment only). If so, the offenses are allied offenses of similar import and must be merged. *Johnson* at P 50. On the other hand, if the offenses are committed separately or with a separate animus, the offenses will not merge. Id. at P 51.
>
> **[\*\*P13]** We employ the *Johnson* analysis to determine whether felonious assault, second and third-degree child endangering, and domestic violence are allied offenses similar import under R.C. 2941.25. First we examine whether it is possible to commit each of these offenses with the same conduct. *Johnson* at P 48.
>
> **[\*\*P14]** The offense of felonious assault under R.C. 2903.11(A)(1) requires proof that the defendant knowingly caused serious physical harm. Domestic violence under R.C. 2919.25(A) requires proof that the defendant knowingly caused physical harm to a family or household member. Third-degree felony child endangering under R.C. 2919.22(A) requires proof that a parent or other actor listed in the statute recklessly created a substantial risk to the health or safety of a minor child by violating a duty of care, protection, or support, resulting in serious physical harm. Finally, second-degree felony child endangering under R.C. 2919.22(B)(1)

requires proof that the defendant recklessly abused a minor child, resulting in serious physical harm.

[**P15] We conclude that it is possible to commit the offenses of felonious assault, second and third-degree child endangering, and domestic violence with the same conduct. *Johnson* at P 48. Where, as here, a parent violates his duty of care and thereby knowingly inflicts serious physical harm upon a minor child, it is possible for him to have committed all of these offenses. Because we answer the first inquiry in the affirmative, we must next examine whether appellant in fact committed the offenses by way of a single act, performed with a single state of mind. Id. at P 49.

[**P16] The offenses were based on the following conduct, as revealed by evidence adduced at trial. Appellant sometimes babysat the twins alone while Staci was at work. He conceded that the babies always seemed to sustain their injuries while in his care. However, appellant attributed their injuries to a number of household "accidents." He also admitted to employing certain techniques to soothe the crying babies which may have unintentionally injured them. Appellant described some of these techniques and demonstrated them on a baby doll in videotaped interviews with law enforcement officials. Testimony offered by a number of witnesses referred in depth to the various injuries sustained by both babies and the manner in which such injuries were typically inflicted.

[**P17] Appellant was convicted on two counts for each of the offenses. While one count always pertained to K.C. and the other to S.C., the indictments neglected to specify which victim matched up with which count for any of the offenses. Additionally, the evidence at trial was generally presented and was not allocated to specific counts in the indictment.

[**P18] Due to the way the case was indicted and tried, it is impossible for us to parse out which allegations of appellant's conduct were meant to support which charges. As our own analysis of appellant's manifest weight challenge in *Craycraft I* reveals, none of the injuries sustained by the twins were explicitly linked to separate counts in the indictments. Rather, the state relied upon the same conduct to prove the offenses of felonious assault, second and third-degree child endangering, and domestic violence. *Johnson* at P 56. Although the testimony indicates that there were separate injuries and, in all likelihood, separate incidents of abuse, appellant's convictions for all of the offenses were generally based on the series of events which resulted in the twins' injuries. The

5

charges were never connected to particular instances of appellant's conduct.

[**P19] Because this was a *pre-Johnson* case, the charges were pursued collectively in contemplation of the now-overruled *Rance* analysis for allied offenses of similar import. Following *Johnson*, it is likely that criminal cases will proceed differently from the indictment forward. In the present matter, neither the parties, the trial court, nor this court could have anticipated the *Johnson* decision and its impact on the allied offenses analysis. However, because *Johnson* is now the law and this case cannot be retried due to Double Jeopardy concerns, we are compelled to view the record as it stands in revisiting the issue.

[**P20] Upon reviewing the case, it is evident that the state relied upon the same conduct to support appellant's convictions for felonious assault, second and third-degree child endangering, and domestic violence on the four counts pertaining to K.C. Consequently, the offenses concerning K.C. are allied offenses of similar import and must be merged. Id. at P 50. Similarly, the state relied upon the same conduct to support appellant's convictions on the four counts concerning S.C. Consequently, the offenses pertaining to S.C. are allied offenses of similar import and must be merged. Id.

[**P21] As far as we can discern, the state retains the right to elect which allied offense to pursue at sentencing following a remand to the trial court, and the trial court is still bound by the state's election. *State v. Whitfield*, 124 Ohio St. 3d 319, 2010 Ohio 2, P 20, 24, 922 N.E.2d 182. This prior decree issued by the Ohio Supreme Court in *Whitfield* appears to be unchanged in the wake of *Johnson*.

[**P22] Insofar as the trial court failed to merge the allied offenses, the judgments of the trial court are reversed and this matter is remanded for further proceedings according to law and consistent with this opinion.

[**P23] Judgments affirmed in part, reversed in part, and remanded.

*State v. Craycraft*, 193 Ohio App. 3d 594 (12th Dist. 2011).

Upon remand, the prosecutor elected the two felonious assault convictions and the other convictions were merged with those. The trial judge then sentenced Craycraft to eight years on

6

each count, to be served consecutively, for a total of sixteen years incarceration. Craycraft again appealed, pleading one assignment of error with three issues, including a claim that he should not have received a *de novo* sentencing hearing, the resentencing was unconstitutionally vindictive, and a new Ohio statute should have been applied. As to the vindictive resentencing claim, the Twelfth District held:

> **[\*P10]** Next, appellant argues that the trial court "vindictively increased" his sentence upon remand "after a successful appeal to the Ohio Supreme Court." As noted above, appellant was originally sentenced to serve a total of 22 years in prison. As part of this sentence, the trial court ordered appellant to serve two consecutive six-year prison terms, or, stated differently, a total of 12 years in prison, on the two felonious assault offenses. However, upon remand from this court, the trial court ordered appellant to serve two consecutive eight-year prison terms, for a total of 16 years in prison, on the two felonious assault offenses. According to appellant's argument, which implicates *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L. Ed. 2d 656 (1969), and its progeny, the trial court violated his due process rights by increasing the sentence he received on each felonious assault offense from a six-year prison term to an eight-year prison term. We disagree.
>
> **[\*P11]** In *Pearce*, the U.S. Supreme Court explained that due process precludes vindictiveness from playing any role in a defendant's sentence following a remand. *Id.* at 725. Under some circumstances, a presumption of vindictiveness exists when a defendant receives a more severe sentence on remand. *State v. Johnson*, 2nd Dist. No. 23297, 2010 Ohio 2010, ¶ 5. Cases subsequent to *Pearce* indicate that such a presumption arises only when circumstances establish a "reasonable likelihood" that an increased sentence is the product of vindictiveness. *See, e.g., Alabama v. Smith*, 490 U.S. 794, 799, 109 S.Ct. 2201, 104 L. Ed. 2d 865 (1989). "Where there is no such reasonable likelihood, the burden remains upon the defendant to prove actual vindictiveness." *Id*, citing *Wasman v. United States*, 468 U.S. 559, 569, 104 S.Ct. 3217, 82 L. Ed. 2d 424 (1984).
>
> **[\*P12]** At the outset, although we note that the same judge presided over both appellant's original sentencing hearing and his new sentencing hearing upon remand, we question whether the presumption of vindictiveness automatically applies when a

7

defendant is resentenced following a remand for the application of the Ohio Supreme Court's decision in *Johnson.* As in those cases requiring a remand for resentencing under *State v. Foster*, 109 Ohio St.3d 1, 2006 Ohio 856, 845 N.E.2d 470, these are not cases in which a trial court judge has been reversed for erroneously applying the law. *See State v. Andrews*, 12th Dist. No. CA2006-06-142, 2007 Ohio 223, ¶ 23 (questioning whether presumption of vindictiveness automatically applies when a defendant is resentenced as a result of the Ohio Supreme Court's decision in *Foster*).

**[\*P13]** That said, to support his vindictive resentencing claim, appellant initially argues that the trial court engaged in impermissible "sentence packaging" during its original sentencing hearing by sentencing him to serve two consecutive six-year prison terms on the felonious assault offenses knowing "it was able to impose more time on the other offenses which now required merger." However, even if we were to find the trial court originally engaged in impermissible sentence packaging, it is clear that upon remand the trial court properly considered each of the state elected felonious assault offenses before ordering appellant to serve two consecutive eight-year prison terms. Each of the two elected offenses related to only one of the two victims. In other words, appellant was sentenced to serve eight years in prison for assaulting K.C., his two-month-old son, and an additional eight years for assaulting S.C., his two-month-old daughter. Therefore, because the sentences imposed relate to each individual victim, this is simply not a case in which the trial court considered the offenses as a group before imposing one overarching sentence.

**[\*P14]** Appellant also argues that there was no evidence presented to justify increasing his sentence from two consecutive six-year prison terms to two consecutive eight-year prison terms. According to appellant, this indicates actual vindictiveness on the part of the trial court. However, as noted above, the trial court was required to conduct a de novo review of the affected sentences and "impose a sentence that [was] appropriate for the merged offense" upon remand. *Wilson*, 129 Ohio St. 3d 214, 2011 Ohio 2669 at ¶ 15, 18, 951 N.E.2d 381; *Whitfield*, 124 Ohio St. 3d 319, 2010 Ohio 2 at ¶ 24, 922 N.E.2d 182.

**[\*P15]** Furthermore, prior to sentencing appellant to serve two consecutive eight-year prison terms upon remand, the trial court specifically stated that it had considered appellant's extensive criminal history, the severity of the victims' injuries, the victims' ages at the time of the assault, appellant's relationship to the

8

> victims, and his lack of remorse. We find no error in the trial court's decision finding two consecutive eight-year prison terms was an appropriate sentence. Accordingly, because the record is devoid of any evidence indicating the trial court's sentencing decision was vindictive, appellant's second issue presented is overruled.

*State v. Craycraft*, 2012-Ohio-884, 2012 Ohio App. LEXIS 768 (12th Dist. Mar. 5, 2012). The Ohio Supreme Court declined jurisdiction over a subsequent appeal. *State v. Craycraft*, 132 Ohio St. 3d 1463 (2012).  The instant habeas corpus petition followed.

## Analysis

**Ground One:  Vindictive Resentencing After Appeal**

In his sole Ground for Relief, Craycraft claims he was vindictively resentenced in violation of his Due Process rights.

Craycraft urges this Court to review his claim *de novo*, asserting "the Warden has abandoned the ruling issued by the State court, so that court's rationale is no longer being tested."  (Traverse, Doc. No. 15, PageID 1713.)  The Warden disclaims having taken any such position and reiterates  that this Court should defer to the state court decision (Reply to Traverse, Doc. No. 18, PageID 1726-27).

There is no question in the Magistrate Judge's mind that the Twelfth District Court of Appeals decided the issue presented in the First Ground for Relief, to wit, was the resentencing vindictive in violation of the Due Process Clause of the Fourteenth Amendment?  The Supreme Court has made it clear that what a habeas court is to review is the decision of the state court; its reasoning only comes into play if the reasoning demonstrates that its application of Supreme

9

Court precedent was objectively unreasonable.  The Supreme Court has written on this question:

> The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas "retrials" and to ensure that state-court convictions are given effect to the extent possible under law.  See *Williams v. Taylor,* 529 U.S. 362, 403-404, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).  To these ends, § 2254(d)(1) provides:
>
> > (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> >
> > "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."
>
> As we stated in *Williams,* § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. 529 U.S., at 404-405, 120 S.Ct. 1495.  A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  *Id.,* at 405-406, 120 S. Ct. 1495.   The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  *Id.,* at 407-408, 120 S.Ct. 1495.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams* that an unreasonable application is different from an incorrect one.  *Id.,* at 409- 410, 120 S.Ct. 1495.  See also *id.,* at 411, 120 S.Ct. 1495 (a federal habeas court may not issue a writ under the unreasonable application clause "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly").

*Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  This Court does not, therefore, engage in *de novo* review, but instead must determine if the Twelfth District's decision is contrary to or an

10

unreasonable application of Supreme Court case law.

In *North Carolina v. Pearce*, 395 U.S. 711 (1969), cited by the Twelfth District as the lead case, the Supreme Court held:

> In order to assure the absence of such a motivation [of vindictiveness], we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. These reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentence.

395 U.S. at 726. *See also United States v. Goodwin*, 457 U.S. 368 (1982). A defendant who does not have the benefit of the presumption can still prevail if he can show actual vindictiveness. *United States v. Jackson*, 181 F. 3d 740, 744 (6th Cir. 1999).

The actual sentences imposed in this case are shown in tabular form:

| Charge of conviction | First Sentence | Re-sentence |
| --- | --- | --- |
| Felonious assault | 6 years | 8 years |
| Felonious assault | 6 years | 8 years |
| Endangering children | 5 years | Merged with felonious assault |
| Endangering children | 5 years | Merged with felonious assault |
| Endangering children | Merged with child endangering | Merged with felonious assault |
| Endangering children | Merged with child endangering | Merged with felonious assault |
| Total | 22 years | 16 years |

(Traverse, Doc. No. 15, PageID 1714.) In addition, not mentioned in the Traverse are two counts of domestic violence with prior conviction specifications, on which, both before and after remand, Craycraft was sentenced to four years each, to be served concurrently with the other sentences.

Craycraft argues *Pearce* applies simply to this case: the same judge imposed sentence after reversal on appeal and increased the sentence on the two counts of felonious assault by two

years each., *Id*. at PageID 1715. Under those circumstances, Petitioner says, the *Pearce* presumption of vindictiveness applies. *Id.*

Noting that Craycraft's aggregate sentence is six years less after re-sentencing, the Warden argues the *Pearce* presumption does not apply in this circumstance. (Return of Writ, Doc. No. 9, PageID 57, citing *Sexton v. Kemna*, 278 F.3d 808 (8th Cir. 2002); *Bratton v. Beck,* 2007 U.S. Dist. LEXIS 46670 (N.D. Ohio 2007); *Ferrell v. United States,* 1999 U.S. App. LEXIS 30596 (6th Cir. 1999); and *United States v. Rodgers,* 278 F.3d 599 (6th Cir. 2002)).

Petitioner dismisses this precedent, saying that it all comes from jurisdictions which accept the "sentencing package doctrine" which the Ohio Supreme Court rejected in *State v. Saxon*, 109 Ohio St. 3d 176 (2006). Petitioner argues Ohio courts applying *Saxon*, have found the *Pearce* presumption applies "even if the aggregate sentence remains the same. . ." (Traverse, Doc. No. 15, PageID 1718, citing *State v. Johnson,* 2007-Ohio-6512, 174 Ohio App. 3d 130 (1st Dist. 2007), and *State v. Bradley*, 2008-Ohio-720, 2008 Ohio App. LEXIS 621 (2nd Dist. 2008)).

In *Bradley* the Second District noted that *Saxon* did not announce new Ohio law. *Bradley*, 2008-Ohio-720, ¶ 29 quoting *Saxon* at ¶ 10: "This court has never adopted the sentencing-package doctrine, and we decline to do so now." The *Bradley* court, however, found that the sentencing judge had employed the sentencing package doctrine in violation of Ohio law:

> **[\*P35]** The trial court erred when it imposed harsher sentences in order to serve the purposes and principles of sentencing with respect to the aggregate of the four separate offenses the court imposed, because in so doing the court applied the sentence packaging doctrine, which Ohio courts may not employ. *Saxon.* That error does not portray a vindictive attitude. However, as with respect to the matter of the fewer offenses of which Defendant Bradley was convicted on his guilty pleas, and because it constitutes an error of law, the court's purpose to achieve a greater

12

>aggregate sentence cannot serve to rebut the presumption of vindictiveness arising from those harsher sentences.

*Id.*

In *Johnson*, reversal was required by *State v. Foster,* 109 Ohio St. 3d 1 (2006), and on remand the trial judge imposed a more severe sentence, commenting that his original sentence was "constrained by the felony sentencing guidelines that were in place at the time." *Johnson,* 2007-Ohio-6512, ¶ 9. The First District noted that two other Ohio appellate courts had concluded the *Pearce* presumption did not apply to resentencings required by *Foster*. The First District disagreed and found the *Pearce* presumption applied but had been rebutted in this case. *Id.* at ¶ 15.

Finally, Petitioner relies on *Martin v. Warden*, 2012 U.S. Dist. LEXIS 36221 (S.D. Ohio 2012)(Merz, M.J.), adopted at 2012 U.S. Dist. LEXIS 78304 (S.D. Ohio 2012)(Spiegel, D.J.) In *Martin* the trial court had made sentences consecutive rather than concurrent on remand to correct an error in the imposition of post-release control. This Court found failure to raise this as an assignment of error under *Pearce* was ineffective assistance of appellate counsel, requiring issuance of the writ for a new appeal. *Id.* at *28.

It is unclear to this judge why a State's adoption or rejection of the "sentencing package doctrine" should control whether the *Pearce* presumption of vindictiveness is applicable or not. In *Sexton*, as Petitioner notes, the Eighth Circuit confirmed the adoption of the sentencing package doctrine by Missouri, but did not make its constitutional analysis turn on that point. It wrote:

>The issue, then, in this multi-count case, is whether the "same sentence" inquiry should be made on a count-by-count basis, or simply by comparing the total prison sentence imposed before and after the successful appeal. A number of our sister circuits have considered this issue in the context of federal prosecutions, where

we have supervisory as well as constitutional jurisdiction. Most concluded, as the Missouri Court of Appeals did in this case, that the total sentences should be compared. Two circuits instead compared the total sentence after remand with the total sentence imposed on those same counts before the appeal. See *United States v. Vontsteen*, 950 F.2d 1086, 1092-93 (5th Cir. 1992) (en banc) (collecting cases). Our research uncovered three pre-AEDPA circuit decisions in which state inmates sought federal habeas relief under Pearce from their multi-count state court sentences. Relief was denied in all three because the second sentence was not more severe, but the cases were not factually similar to this case. See *Washington v. Regan*, 510 F.2d 1126 (3d Cir. 1975); *Timmons v. Richards,* 940 F.2d 666 (7th Cir. 1991) (unpublished); *Thomas v. Sutton,* 857 F.2d 1469 (4th Cir. 1988) (unpublished). See also *Kelly v. Neubert,* 898 F.2d 15, 18 (3d Cir. 1990) (Pearce presumption "should not be mechanically applied when some of a defendant's individual sentences are increased, but his aggregate sentence is reduced on remand following a successful appeal"). [Footnote omitted.]

Though these prior circuit court decisions do not provide a definitive answer to our issue, they tend to confirm that the Missouri Court of Appeals decision was not an unreasonable application of Pearce within the meaning of 28 U.S.C. § 2254(d)(1). In addition, later Supreme Court decisions have not broadly extended the Pearce presumption of vindictiveness. See *Alabama v. Smith*, 490 U.S. 794, 801-03, 104 L. Ed. 2d 865, 109 S. Ct. 2201 (1989) (no presumption when sentence following trial is more severe than previous sentence following guilty plea; Pearce overruled on this issue); *Chaffin v. Stynchcombe*, 412 U.S. 17, 24-29, 36 L. Ed. 2d 714, 93 S. Ct. 1977 (1973) (no presumption when more severe sentence imposed by a different jury; Pearce is concerned only with judicial vindictiveness, not whether the defendant's right to appeal may be "chilled"). These later Supreme Court decisions, and the circuit court decisions declining to presume vindictiveness when a sentencing judge reimposes the same total sentence in a multi-count case, are strong support for the district court's conclusion that the Missouri courts did not unreasonably apply Pearce in this case. See *Williams*, 529 U.S. at 410 (an *unreasonable* application of federal law is different from an *incorrect* application of federal law").

*Sexton,* 278 F.3d  at 812-13.

14

Whether or not the *Pearce* presumption applies here, the writ should be denied. That is, it is either the case that *Pearce* does not reach this situation, based on the conflicting precedent and the absence of a Supreme Court decision directly in point, or, if it does, that the presumption of vindictiveness has been rebutted.

*Pearce* arose from a reversal of a conviction and a re-sentence after re-trial. That is, Pearce had successfully challenged on appeal one or more of the trial judge's rulings and a court of appeals had found the trial judge was wrong. That is certainly not what happened here. Craycraft sought relief under Ohio Revised Code § 2941.25 in the trial court; the denial of that relief was affirmed on appeal because the trial judge had correctly applied the law as it then stood. *State v. Craycraft*, Case Nos. CA2009-02-013 and CA2009-02-014 (12th Dist. Feb. 22, 2010)(unreported, copy at Return of Writ, Doc. No. 9-1, PageID 227-58). In its later decision, quoted above, the Twelfth District noted that the Ohio Supreme Court in *Johnson* expressly overruled *State v. Rance* (1999), 85 Ohio St.3d 632 (1999). In assessing the likelihood of judicial vindictiveness, a habeas court should look at differences among reversals. It is one thing to be reversed when a defendant calls a plain error to the attention of the appellate court. It is another entirely to be reversed because the state supreme court has adopted an entirely new analysis of a governing statute, which is what happened here.

Secondly, apart from the "sentencing package doctrine," the aggregate sentence being served by Petitioner is substantially less than the prior aggregate sentence. In *Johnson,* the First District rested a finding of non-vindictiveness in part on the fact that the total sentence did not increase. *Johnson, supra*, at ¶ 15. As the Twelfth District found, the trial judge was required to re-sentence Craycraft *de novo* and determine what was an appropriate sentence for his felonious assault on each of his infant children. The record shows that is what was done.

15

The Supreme Court has announced a variety of circumstances in which the *Pearce* presumption does not apply or has been successfully rebutted. In *Texas v. McCullough*, 475 U.S. 134 (1986) it wrote:

> Beyond doubt, vindictiveness of a sentencing judge is the evil the Court sought to prevent rather than simply enlarged sentences after a new trial. The *Pearce* requirements thus do not apply in every case where a convicted defendant receives a higher sentence on retrial. Like other "judicially created means of effectuating the rights secured by the [Constitution]," *Stone v. Powell*, 428 U.S. 465, 482, 96 S. Ct. 3037, 49 L. Ed. 2d 1067 (1976), we have restricted application of *Pearce* to areas where its "objectives are thought most efficaciously served," 428 U.S., at 487. Accordingly, in each case, we look to the need, under the circumstances, to "guard against vindictiveness in the resentencing process." *Chaffin v. Stynchcombe*, 412 U.S. 17, 25, 93 S. Ct. 1977, 36 L. Ed. 2d 714 (1973) (emphasis omitted). For example, in *Moon v. Maryland*, 398 U.S. 319, 90 S. Ct. 1730, 26 L. Ed. 2d 262 (1970), we held that *Pearce* did not apply when the defendant conceded and it was clear that vindictiveness had played no part in the enlarged sentence. In *Colten v. Kentucky*, 407 U.S. 104, 92 S. Ct. 1953, 32 L. Ed. 2d 584 (1972), we saw no need for applying the presumption when the second court in a two-tier trial system imposed a longer sentence. In *Chaffin, supra*, we held *Pearce* not applicable where a jury imposed the increased sentence on retrial. Where the prophylactic rule of *Pearce* does not apply, the defendant may still obtain relief if he can show actual vindictiveness upon resentencing. *Wasman v. United States*, 468 U.S. 559, 569, 104 S. Ct. 3217, 82 L. Ed. 2d 424 (1984).
>
> The facts of this case provide no basis for a presumption of vindictiveness. In contrast to *Pearce*, McCullough's second trial came about because the trial judge herself concluded that the prosecutor's misconduct required it. Granting McCullough's motion for a new trial hardly suggests any vindictiveness on the part of the judge towards him. "[Unlike] the judge who has been reversed," the trial judge here had "no motivation to engage in self-vindication." *Chaffin*, 412 U.S., at 27. In such circumstances, there is also no justifiable concern about "institutional interests that might occasion higher sentences by a judge desirous of discouraging what he regards as meritless appeals." *Ibid*. In granting McCullough's new trial motion, Judge Harney went on record as agreeing that his "claims" had merit. Presuming vindictiveness on this basis alone would be tantamount to

16

> presuming that a judge will be vindictive towards a defendant merely because he seeks an acquittal. Thus, in support of its position, the dissent conjures up visions of judges who view defendants as temerarious for filing motions for new trials, post, at 151, and who are "annoyed" at being forced "to sit through . . . [trials] whose [results] [are] foregone [conclusions]," post, at 150. We decline to adopt the view that the judicial temperament of our Nation's trial judges will suddenly change upon the filing of a successful post-trial motion. The presumption of *Pearce* does not apply in situations where the possibility of vindictiveness is this speculative, particularly since the presumption may often "operate in the absence of any proof of an improper motive and thus . . . block a legitimate response to criminal conduct," *United States v. Goodwin*, 457 U.S. 368, 373, 102 S. Ct. 2485, 73 L. Ed. 2d 74 (1982). Indeed, not even "apprehension of such a retaliatory motivation on the part of the sentencing judge," *Pearce*, 395 U.S., at 725, could be present in this case. McCullough was entitled by law to choose to be sentenced by either a judge or a jury. Faced with that choice, on retrial McCullough chose to be sentenced by Judge Harney. There can hardly be more emphatic affirmation of his appraisal of Judge Harney's fairness than this choice. Because there was no realistic motive for vindictive sentencing, the *Pearce* presumption was inappropriate.

*McCullough*, 475 U.S. at 138-139.

Given the wide variety of factual circumstances in which the Supreme Court has found the *Pearce* presumption does not apply or has been successfully rebutted, this Court cannot say that the Twelfth District's decision is contrary to or an objectively unreasonable application of clearly established Supreme Court law.

17

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition be dismissed with prejudice.  Because reasonable jurists could disagree with this conclusion, Petitioner should be granted a certificate of appealability.

April 15, 2014.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).